```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE MURPENTER LLC,           : CIVIL ACTION
d/b/a Uniglobe Wings Travel    :
                               : NO. 12-CV-5060
```

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                      **December 20, 2012**

    This is an appeal from the Order entered by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania on July 30, 2012 imposing sanctions against and directing Debtor's counsel to pay the amount of $4,694.00 to Debtor's principal creditor, Carmen Enterprises Inc. ("Carmen")[1] pursuant to Fed. R. Bank. P. 9011.  For the reasons set forth in the paragraphs that follow, the appeal shall be denied and the Bankruptcy Court's order affirmed.

**History of the Case**

    The instant bankruptcy action has its origins, along with two other civil actions which are presently pending in the Court of Common Pleas of Montgomery County, Pennsylvania, in an agreement dated October 31, 2001 between Murpenter and Carmen under which Carmen agreed to sell most of its assets and good

---

[1] Carmen is a Pennsylvania corporation whose sole shareholder is the attorney who has represented it throughout the proceedings in this Court, before the Bankruptcy Judge and the state court, Bruce J. Chasan, Esquire.

will in its travel agency business to Murpenter in exchange for an initial payment of some $15,000 to be followed by seven monthly installment payments of $7,500 and a lump sum payment due on May 1, 2002 in an amount to be determined based on, inter alia, commissions received from both Carmen's non-final paid bookings and Murpenter's bookings and sales between November 1, 2001 and April 30, 2002.  According to the allegations in the first state court action, Murpenter failed to make the required payments in accordance with the schedule set by the agreement and Carmen therefore sought damages in excess of $50,000 under various legal and equitable theories including breach of contract, specific performance, replevin, tortious interference with contract and conversion.  In the second state court action, Carmen seeks to recover the same damages from the corporate officers and owners of Murpenter, Kathleen Murphy and her husband Robert Douglas Carpenter, as well as what are alleged to be two related entities, Blue Moon Travel, Inc. and Marquis Ventures, Inc.

   Apparently, both state court actions have taken more than ten years to wend their way through the Montgomery County court system.  It does appear, however, that the first state court case was scheduled to be tried before the Honorable Emanuel Bertin in April 2012.  Approximately one week before trial, on April 2, 2012, Murpenter filed a Voluntary Petition under Chapter 7 of the

Bankruptcy Code.  Annexed to this petition were several schedules setting forth assets of less than $7,000, one unsecured, priority creditor - the Internal Revenue Service to whom Murpenter owed $292 and ten unsecured creditors with claims aggregating $154,997.  With the exception of a claim purportedly owed to Wings Travel Group, LLC,[2] Murpenter's voluntary filing indicated that the largest claim owed was to Carmen in the amount of $47,000.

Of course, the natural effect of the bankruptcy filing was the automatic stay of all proceedings in the state courts – including the scheduled trial of the first state court action. See generally, 11 U.S.C. §362.  In response to the debtor's petition, Carmen filed a Motion to Dismiss the Petition and/or to Modify the Automatic Stay to Permit the State Court litigation to proceed on April 25, 2012.  At the hearing on the motion on May 23, 2012, the Motion to Dismiss was partially granted, the parties having agreed to modify the automatic stay to permit the first state court action to proceed to trial, albeit with the proviso that in the event that Carmen should obtain a judgment in its favor that it was prohibited from executing upon Murpenter's assets without first obtaining an order from the Bankruptcy

---

[2] Carmen alleges, and has adduced evidence that Wings Travel Group is a related company of Murpenter, LLC in that Marquis Ventures, Inc., Carpenter and Murphy are its members and that Wings Travel Group was set up in 2003 to take over the payroll handling functions for Uniglobe Wings Travel and several other affiliated companies.  See, e.g., Exhibits "J," "P," "S,", "T,", "U," and "V" to Carmen's Motion to Dismiss.

Court.

Thereafter, on June 8, 2012, Carmen filed a Motion for Sanctions on the grounds that the filing of the Voluntary Petition was for an improper purpose to harass Carmen and unreasonably delay the state court proceedings, and inasmuch as the Answer to the Motion to Dismiss consisted of general denials requiring Carmen to prove the averments contained therein, it too served to unreasonably and vexatiously multiply the proceedings. Bankruptcy Judge Eric Frank held a hearing on the sanctions motion on July 18, 2012 and, after taking the matter under advisement, issued an Order on July 30, 2012 granting the motion in part and awarding Carmen the sum of $4,694.00 in counsel fees. It is from this Order that both parties now appeal.

### **Standard of Review**

Under Fed. R. Bankr. P. 8013,

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside, unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Thus an appeal from an order of a bankruptcy court places the district court in the posture of an appellate tribunal, requiring it to accord the appropriate level of deference to the decision of the bankruptcy judge. Bierbach v. Wagner, Civ. A. No. 1:07-CV-0072, 2007 U.S. Dist. LEXIS 25107 at *4 (M.D. Pa.

April 4, 2007).  The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issues presented on appeal.  The factual determinations of a bankruptcy court are not to be set aside unless they are "clearly erroneous."  In re Y.J. Sons & Co., 212 B.R. 793, 800 (D.N.J. 1997)(citing, inter alia, Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995), cert. denied, 517 U.S. 1137, 116 S. Ct. 1424, 134 L. Ed.2d 548 (1996); In re Indian Palms Associates, Ltd., 61 F.3d 197, 203 (3d Cir. 1995)).  Its legal conclusions are reviewed de novo.  See, In re Global Industrial Technologies, 645 F.3d 201, 209 (3d Cir. 2011); In re Jersey Tractor Trailer Training, Inc., 580 F.3d 147, 153 (3d Cir. 2009); IRS v. Pransky, 318 F.3d 536, 542 (3d Cir. 2003). A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data."  Pharmaceutical Sales Consulting Corp. v. Accucorp Packaging, Inc., 231 Fed. Appx. 110, 113, 2007 U.S. App. LEXIS 2215, at *7 (3d Cir. Jan. 31, 2007); Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002).  And where the Bankruptcy Court has had cause to exercise its discretion, those exercises are reviewed for abuse thereof, meaning that the determination was "arbitrary, irrational, or contrary to law. Salzano v. Forman, 2009 U.S. Dist. LEXIS 59867 at *9-*10 (D. N.J.

July 14, 2009)(quoting Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005) and In re United Healthcare Systems, Inc., 396 F.3d 247, 249 (3d Cir. 2005)).  See also, Kool, Mann, supra.  Stated otherwise, "[u]pon review, an abuse of discretion will be found if the bankruptcy judge acted in an irrational, arbitrary or capricious manner 'clearly contrary to reason and not justified by the evidence.'" Advanced Restoration Technologies, Inc. v. Shortgrass, Inc., 2006 U.S. Dist. LEXIS 22208 at *11-*12 (D.N.J. March 30, 2006)(quoting Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir. 1977)).  In accord, In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004)("An abuse of discretion exists where the district court decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an errant application of law to fact.")

## **Discussion**

As noted, at issue in this appeal is the propriety of the Bankruptcy Judge's determination that the filing of the debtor's voluntary petition was in bad faith and the amount of counsel fees awarded as a sanction therefor.  Carmen further excepts to the Bankruptcy Judge's determination that no sanctions were warranted for the debtor's answer/response to its motion for dismissal.

It should be noted that there is a general presumption that debtors file bankruptcy petitions in good faith.  Advanced

6

Restoration, 2006 U.S. Dist. LEXIS at *12-*13 (citing In re Shar, 253 B.R. 621, 628 (D. N.J. 1999)).  Under 11 U.S.C. §707(a), the court may, after notice and hearing, dismiss a case under Chapter 7 "for cause."  Although §707(a) fails to mention the lack of good faith as a ground for dismissal, the Third Circuit has interpreted this statute as "allow[ing] a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing."  In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000); In re Falch, 450 B.R. 88, 93 (Bankr. E.D. Pa. 2011).

"Once a movant 'calls into question' a debtor's good faith, it becomes the debtor's burden to establish that the petition was filed in good faith."  In re Glunk, 342 B.R. 717, 729 (Bankr. E.D. Pa. 2006)(quoting Tamecki, 229 F.3d at 208 (Alito, J., concurring)).  "Generally the facts surrounding good faith will be determined by circumstantial evidence," as "[i]t is unlikely that a debtor will ever acknowledge its own bad faith."  In re Y.J., 212 B.R. at 801 (quoting In re Roxy Real Estate Co., Inc., 170 B.R. 571, 573 (E.D. Pa. 1993)).  "An assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy."  Perlin v. Hitachi Capital America Corp., 497 F.3d 364, 372 (3d Cir. 2007)(citing In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004)).  Included in this assessment may

be the debtor's income, i.e., his ability to repay his debts, the "honest intentions" of the debtor and "whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law." Id. (quoting Tamecki, 229 F.3d at 207).  See also, American Telecom Corp. v. Siemens Information & Communications Network, Inc., No. 04 C 8083, 2005 U.S. Dist. LEXIS 19633 (N.D. Ill. 2005)("There is no rigid test for determining whether a petition is filed in good faith; [i]nstead, the court looks at the totality of the circumstances surrounding the filing, and evaluates whether the petition presents a bankruptcy case implicating any of the policies underlying the chapter in which the debtor seeks protection.")  The decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court.[3]  Perlin, 497 F.3d at 372; In re

---

[3]  The Bankruptcy Court in Glunk further noted the following "expansive list of factors" which may also be considered in evaluating whether to dismiss a chapter 7 case for bad faith:

> (1) whether the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
>
> (2) whether the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
>
> (3) whether the debtor filed the case in response to a judgment pending litigation;
>
> (4) whether the debtor made no effort to repay his debts;
>
> (5) the unfairness of the use of Chapter 7;
>
> (6) whether the debtor has sufficient resources to pay his debts;
>
> (7) whether the debtor is paying debts to insiders;
>
> (8) whether the schedules inflate expenses to disguise financial well-being;

Tamecki, at 207.

     In this case, we find Judge Frank's determination that the bankruptcy petition was filed in bad faith to be amply supported by the evidence before him and his decision to award sanctions for its bad faith filing to be well within the proper exercise of his discretion.  For one, this bankruptcy petition was filed just one week before the first state court action (an action which took some 10 years to reach the point of trial-readiness) was scheduled to finally be tried.  Carmen was clearly the debtor's primary creditor – the only others with claims approaching that belonging to Carmen were to a related, insider entity and a judgment owing to a prior landlord for back rents entered more than ten years earlier.  As evinced from a review of both the debtor's schedule of assets and from the report filed by the Trustee on June 11, 2012, this is a "no-asset" case such that Chapter 7's underlying policy of distribution to creditors

---

        (9) whether the debtor transferred assets;

        (10) whether the debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors;

        (11) whether the debtor employed a deliberate and persistent pattern of evading a single major creditor;

        (12) whether the debtor failed to make candid and full disclosure;

        (13) whether the debts are modest in relation to assets and income; and

        (14) whether there are multiple bankruptcy filings or other procedural "gymnastics."

In re Glunk, 342 B.R. at 730 (citing In re Keobapha, 279 B.R. 49, 52 (Bankr. D. Conn. 2002).

cannot, a fortiori, be satisfied.  <u>See</u>, <u>e.g.</u>, <u>American Telecom</u>, 2005 U.S. Dist. LEXIS 19633 at *8 ("The only legitimate purpose of a corporate Chapter 7 petition is 'the fair and orderly liquidation of corporate assets to creditors,' ... and the no-asset Chapter 7 case obviously cannot implicate a policy of distribution to creditors.").  And, while it is self-evident that the entity itself could not make a lifestyle adjustment, as is reflected in the tax returns of Carpenter and Murphy and the article in the April 2012 edition of Luxury Travel Advisor magazine it does not appear as though Murpenter's principals were doing so either.  Finally, in view of the significant evidence that close connections exist between the various Carpenter and Murphy travel entities, suspicions are reasonably aroused concerning asset transfers.  In light of all of these factors, we can find no abuse of discretion in Judge Frank's conclusion that the petition's filing was "sufficiently suspicious so as to place the burden of evidentiary production, if not the ultimate burden of proof, on the Respondents to establish that the case was filed in good faith[4]."

   Having determined that the burden of demonstrating good faith was thereby properly placed on the debtor, we likewise discern no grounds for reversal in Judge Frank's assessment that the debtor had failed to satisfy its burden.  Indeed, as the

---

   [4]   <u>See</u>, Order of July 30, 2012, p. 9.

10

bankruptcy court noted, the debtor's only explanation for the filing was that it "intended the bankruptcy filing to be a global, symbolic act: informing <u>all of the Debtor's creditors</u> that the Debtor would submit to an investigation by an independent fiduciary, the liquidation of its current assets and the initiation of any litigation by the fiduciary to recover transferred assets for the benefit of all creditors as may be appropriate." (July 30, 2012 Order, at p. 9)(emphasis in original). However, given that there was apparently only one creditor actually seeking payment from the debtor and that this sole creditor had for the past ten years been independently assessing the debtor's financial affairs through discovery in two separate lawsuits, we also give this explanation little credence. Accordingly, we find no error in the Judge Frank's finding that Debtor had failed to meet its burden of demonstrating the good faith nature of its filing.

We next consider the propriety of the imposition of sanctions against Fox, Rothschild and Edward DiDonato, Esquire, the debtor's counsel. As noted above, Judge Frank awarded Carmen the sum of $4,694 in counsel fees to be paid by DiDonato and Fox as a sanction pursuant to Fed. R. Bankr. P. 9011 for the bad faith filing of the bankruptcy petition.

Fed. R. Bankr. P. 9011 is essentially the equivalent to Fed.

R. Civ. P. 11[5] and provides in pertinent part:

>      .....
>
> **(b) Representations to the court.**  By presenting to the court (whether by signing, filing, submitting or later advocating) a petition, pleading, written motion or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> © **Sanctions**.  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
>      ....

---

[5] As the Third Circuit observed in In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3d Cir. 2008): "Rule 9011, it is clear, discourages in bankruptcy proceedings the same conduct proscribed by Rule 11 - signing or advocating to the court a paper that violates the certification standard of the Rule - with the purpose of both Rules being to deter baseless filings."

>   (2) Nature of sanction; limitations.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a non monetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
>>   (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
>
>   .....

Thus, sanctions under Rule 9011 are based on an objective standard of reasonableness under the circumstances and a showing of bad faith is not required. DeAngelis v. Countrywide Home Loans, Inc., 437 B.R. 503, 530 (Bankr. W. D. Pa. 2010)(citing Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995)).  As is the case in Rule 11 cases, the primary question before the district court in reviewing the imposition of sanctions is whether the Bankruptcy Court abused its discretion. Fellheimer, Eichen & Braverman, 57 F.3d 1215, 1223 (3d Cir. 1995); In re Joobeen, 385 B.R. 599, 609 (E. D. Pa. 2008); In re Y.J. Sons, 212 B.R. at 805.

   Again, we discern no abuse of discretion on the part of the Bankruptcy Court's award of sanctions here.  Having appropriately concluded that the petition was, in fact, filed in bad faith, Judge Frank proceeded to examine the behavior and time records of Carmen's counsel, noting that "it [was] astounding

that Carmen would request sanctions in excess of $85,000 for litigating two (2) motions involving straightforward issues of bankruptcy law and civil procedure." (July 30, 2012 Order, endnote 6, p. 12). Indeed, after reviewing Mr. Chasan's "Murpenter Bankruptcy Case Timesheet," we reach the same conclusion as did Judge Frank - the amount of time spent in researching and litigating the relatively non-complex issues before the Bankruptcy Court is beyond excessive and so disproportionate to the concept of reasonableness as to raise significant questions regarding Carmen's counsel's judgment and his own good faith.[6] We agree that the sum of $4,694 ordered to be paid by Debtor's counsel is eminently reasonable and appropriate under the circumstances presented here and should be sufficient to achieve the goal of deterrence of similar conduct in the future.

Finally, we also see no basis to overturn the Bankruptcy Court's finding that the debtor's filing of an answer to Carmen's motion to dismiss was not in bad faith. Again, after having

---

[6] By way of example, Mr. Chasan spent more than 38 hours to research and review case law on vacating bankruptcy stays and dismissing bankruptcy, in researching prior decisions issued by Judge Frank and in researching the bankruptcy rules. Based on our review, we are constrained to agree with Judge Frank's assessment that "Carmen's counsel, an attorney with considerable experience and apparent skill in specialized areas of the law <u>other than</u> bankruptcy law, decided to take an unlimited, open-ended amount of time to teach himself substantial aspects of bankruptcy law and procedure." While Mr. Chasan's intellectual curiosity may be admirable, given the plethora of experienced bankruptcy counsel in the greater Philadelphia area, he nevertheless cannot and should not expect to be fully compensated for his efforts to represent himself on a motion for sanctions.

reviewed the motion to dismiss in its entirety, we likewise find it to be overly lengthy, rambling and yes, "prolix" in nature such that it would be difficult, if not nearly impossible, to respond in any fashion other than by way of a general denial of all allegations.  We therefore concur in Judge Frank's conclusion that the debtor's answer to the said motion did not operate as a flagrant abuse of procedure worthy of sanctions under Rule 9011(b)(3) or (4).

    For all of these reasons, we shall affirm the July 30, 2012 Order of the Bankruptcy Court in all respects.  An order follows.